## SILVANUS BLANCHARD *vs.* INHABITANTS OF CUMBERLAND.

By the *8th sec.* of the *spec. act* of 1821, *c.* 78, dividing the town of *North Yarmouth* and creating the town of *Cumberland*, the right of election there given, to persons dwelling upon lands adjoining the division line, can operate only upon lands owned by such persons, at the time the act took effect.

Where one had erected a dwellinghouse on land, and lived thereon for a long time, although less than twenty years, claiming the same as his own, and of which he was the visible and apparent owner, this land adjoining land on the line of the towns, of which he was the undisputed owner; he is to be so far considered the owner, as to have the right to make the election to which of the towns the land should belong, and not the person who had the legal title thereto.

EXCEPTIONS from the District Court for the Western District, WHITMAN J. presiding,

The action was originally brought before a justice of the peace, to recover the sum of $7,62 and interest, the amount of a tax upon certain lands of the plaintiff, claimed by the defendants to be within their town. The objection to the legality of the tax, was founded upon the allegation, that the land taxed was not in *Cumberland*. The *spec. act* of 1821, *c.* 78, § 8, incorporating the town of *Cumberland* from a part of *North Yarmouth*, provided, " that all persons dwelling on lands adjoining the division line described in the first section of this act, shall have liberty to belong, with their lands adjoining said line, to which of said towns they may elect; provided they make their election in writing, describing such lands, and file the same in the office of the Secretary of State, within ninety days from the passing of this act." If no election was made in this case, the land was on the *Cumberland* side of the line.

The facts are sufficiently stated in the opinion of the Court.

The plaintiff contended, that the right of election was given by the statute to the person who was the real owner of the land ; that the request made by *Joshua Blanchard* to *William*, in 1795, to purchase the land of *Waite* and others, and his agreement to exchange the ten acres for seven, was an admission of the title of *Waite* and others, and amounted to a consent on his part, to hold what he occupied on the gore as tenant to *William*, until the agreement to exchange should be carried into effect, and as there was no evidence that he afterwards pretended to hold adversely to *William*, till the year 1804, or that he ever denied *William's* title to the land, the right of election was in *William*, and that he, having rightfully made his election, the whole gore was a part of *North Yarmouth*.

The judge ruled, and instructed the jury, that in order to determine who had the right of election, they had only to inquire, who was the visible, open, and apparent owner, at the time of the passage of the act; that if *Joshua* was acknowledging *William* as his landlord, or paying him rent, so that *William* could have a constructive possession at the time, he would have the right to make the election ; but if *Joshua* did not acknowledge *William* as his landlord, and was holding adversely to him, and would not suffer him to occupy, and had done so for any considerable time,

though for a less period than twenty years, so that *William* could not be considered as having actual or constructive possession of the premises at the time — in that case, *William* could not be considered as having the right to make the election, and it was therefore void. The verdict was for the defendants, and the plaintiff filed exceptions.

*S. Fessenden* and *Eastman,* argued for the plaintiff, and cited *Spec. st.* 1821, *c.* 78, § 8; *Richards* v. *Daggett,* 4 *Mass. R.* 534; *Cumberland* v. *Prince,* 6 *Greenl.* 408; *Ken. Pur.* v. *Springer,* 4 *Mass. R.* 416; *Norcross* v. *Widgery,* 2 *Mass. R.* 506; *Com.* v. *Dudley,* 10 *Mass. R.* 403; *Porter* v. *Hill,* 9 *Mass. R.* 34; *Little* v. *Libby,* 2 *Greenl.* 242; *Ken. Pur.* v. *Laboree, ib.* 275; *Porter* v. *Hammond,* 3 *Greenl.* 188.

*Preble,* argued for the defendants, but did not cite authorities.

The opinion of the Court was by

Weston C. J. — It appears to us, that upon a fair construction of the eighth section of the act, dividing the town of *North Yarmouth* and creating the town of *Cumberland,* the right of election there given to persons dwelling upon lands adjoining the division line, can operate only upon lands owned by such persons, at the time the act took effect. Thus limited, some judgment could be formed of the extent, to which it might be carried. But if the line might be subject to further fluctuation, by subsequent sales and transfers, a new element of vagueness and uncertainty is introduced, which, in our judgment, the language used does not require. The period of ninety days, within which the certificate of election was to be filed, in the office of the Secretary of State, was intended to afford to those, to whom the privilege was extended, a reasonable time to make up their judgment with due deliberation. It was not intended to afford opportunity to bring, by subsequent purchases, other lands within the influence of this principle; but it was a condition, upon which the right given was made to depend.

Notwithstanding the extraordinary manner, in which *Joshua* and *William Blanchard,* father and son, managed with regard to the part of the gore in dispute, in which legal rights appear to have been lost sight of, under the influence of parental authority on the

one hand, and filial acquiescence on the other, we are of opinion that the right of election was in the father, and not the son. The former certainly dwelt, at the time, on lands adjoining the division line. Prior to 1795, he had erected a house and other buildings on this land, which he continued to occupy, and which it does not appear that the son had ever claimed. The fee of the land the son had acquired, not with a view to disturb, but to quiet the father. He did not first enter under the son, nor had he ever recognized his right to dispossess him. In 1804, he resisted his claim, and persisted in the exclusive enjoyment of the land, in defiance of his son, who appears to have acquiesced in his pretensions. Under the peculiar circumstances of this case, we are of opinion, that the father, at the time when the town was divided, had an interest as owner in the buildings and improvements, which might have been sustained at law. The privilege of election, given to those who bordered upon the line, was yielded to their personal wishes and predilections. If conceded to the son for this property, he would have a right not only to elect for himself, but to transfer his father also to *North Yarmouth*, although he might be better satisfied to remain in *Cumberland*, which embraced lot number eighty-three, of which he was the undisputed owner, being the greater part of his land. If he made no election on his part, and it does not appear that he did, it is evidence that he acquiesced, as far as he was concerned, in the line established by the legislature. So the line must be regarded as remaining, unless it has been made to appear affirmatively, that it was changed, as it respects this part of the gore, by the election of *William Blanchard*. And this, we are of opinion, could not be exercised, to this extent, under the act, without violating or impairing the rights of *Joshua Blanchard*, the father.

*Exceptions overruled.*